IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DI ZENG,<br>      **Petitioner** | : | No. 3:26cv1448 |
| | : | |
| | : | (Judge Munley) |
|    v. | : | |
| | : | |
| CRAIG A. LOWE, Warden of Pike<br>County Correctional Facility;<br>TODD LYONS, Acting Director of<br>Immigration and Customs<br>Enforcement; MARKWAYNE<br>MULLIN, Secretary of the U.S.<br>Department of Homeland Security;<br>and TODD BLANCHE, Attorney<br>General of the United States,<br>      **Respondents** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |

## MEMORANDUM ORDER

Before the court is a petition for writ of habeas corpus under 28 U.S.C. §

2241 filed by Petitioner Di Zeng, a native of the People's Republic of China

("PRC"). (Doc. 1).  The petitioner is an immigration detainee in the custody of the

Department of Homeland Security ("DHS"), Immigration and Customs

Enforcement ("ICE") at the Pike County Correctional Facility ("Pike CCF").  Di's

petition asserts that he experienced a fundamentally unfair custody

redetermination proceeding in March 2026.  At that proceeding, an immigration

judge ("IJ") in the Department of Justice's Executive Office for Immigration

Review determined that the petitioner was a flight risk and that continued

detention was warranted.  The court has jurisdiction to hear the petition;

however, Di failed to demonstrate any due process violation with respect to his bond hearing. As further explained below, the petition will be denied.

**Background**

Di is 37 years old. (Doc. 5-2, Resp. Ex. 1). He entered the United States of America on June 25, 2025 under a non-immigrant B2 tourism visa. Id. at 2. He was permitted to remain in the United States for six months, or until December 23, 2025. Id. Di did not depart the United States. Instead, on December 21, 2025, two days before his visa expiration, petitioner filed a Form I-589 Application for Asylum and Withholding of Removal. Di sought asylum due to his sexual orientation, his religion, and his participation in the White Paper Protests in November 2022. (Doc. 1, Pet., ¶ 54; Doc. 5-4, Resp. Ex. 3, Decision of IJ at 6).

Shortly thereafter, on February 8, 2026, municipal police officers near Wheeling, West Virginia conducted a traffic stop. (Doc. 5-2, Resp. Ex. 1). All vehicle occupants, including Di, presented foreign identification or an international driver's license. Id. Municipal police then contacted ICE officers, who took custody of the petitioner and placed him in immigration detention. Id. Thereafter, DHS issued a Notice to Appear, charging Di as removable under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States for a time longer than permitted. (Doc. 5-3, Resp. Ex. 2).

2

Petitioner is presently detained under 8 U.S.C. § 1226(a), a discretionary detention statute which permits a detainee's release on bond.  On March 11, 2026, Di was afforded a custody redetermination hearing under 8 C.F.R. § 1236.1(d)(1).  After hearing from Di's counsel and DHS counsel, an IJ denied bond, judging the petitioner to be "a significant flight risk." (Doc. 5-7, Resp. Ex. 6, Hearing Transcript at 7).  Di did not appeal that decision to the Board of Immigration Appeals ("BIA").

Less than 30 days later, on April 6, 2026, a different IJ conducted Di's removal hearing.  Afterwards, she ordered the petitioner removed to the PRC and denied his applications for asylum, withholding of removal, and for relief under the Convention Against Torture. (Doc. 5-4).  Di appealed this determination to the Board of Immigration Appeals ("BIA").  That appeal remains pending.

On May 27, 2026, Di filed the instant habeas petition, asserting a violation of the Administrative Procedure Act ("APA") and his due process rights. (Doc. 1). In short, he argues that the IJ failed to properly apply BIA precedent during his bond hearing and thus the proceedings were fundamentally unfair. (Doc. 6, Traverse at 5–6).  In response, the government argues that the court lacks jurisdiction to review the IJ's decision under 8 U.S.C. § 1226(e). Per the government, Di also failed to administratively exhaust his claim.  In the

3

alternative, the government asserts that, based on the record of proceedings, Di received a fair and adequate bond hearing.

**Jurisdiction**

Generally, the court has jurisdiction over habeas petitions pursuant to 28 U.S.C. § 1331 and § 2241(a).  Respondents challenge jurisdiction, citing 8 U.S.C. § 1226(e).  Under that statutory provision, "[n]o court may set aside any action or decision by the Attorney General under this Section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

Despite its jurisdiction-stripping language, Section 1226(e) contains no explicit provision barring habeas review.  Demore v. Kim, 538 U.S. 510, 517 (2003).  The Third Circuit has also never used Section 1226(e) to preclude petitioners from raising a constitutional challenge to the way an immigration bond hearing was conducted. See Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (noting that the habeas petitioner sought "to compel a second bond hearing despite alleging no constitutional defect in the one he received."); Sylvain v. Att'y Gen. of U.S., 714 F.3d 150, 155 (3d Cir. 2013) (citing Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir.2011) ("[Section 1226(e) ] does not limit habeas jurisdiction over constitutional claims or questions of law.")).  Further, in non-precedential opinions, the appellate court has recognized such

4

jurisdiction.  Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair."); Quinteros v. Warden Pike Cnty. Corr. Facility, 784 F. App'x 75, 77 (3d Cir. 2019) ("Though we may not review discretionary decisionmaking involved in denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis.").

Di's petition for writ of habeas corpus and traverse can be distilled down to an argument that he was denied due process.  Therefore, Section 1226(e) does not strip the court of jurisdiction to hear Di's habeas petition.

The government also argues that Di failed to exhaust his administrative remedies. Any exhaustion requirement would be prudential in this case, i.e., judge-made and discretionary. Prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). "But even when courts might otherwise require exhaustion, they may excuse it when, for instance, 'waiver, estoppel, tolling or futility' applies." Id. (quoting Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007)).

5

With his APA claim, Di asserts that the IJ failed to apply BIA precedent during his bond hearing.[1]  He did not appeal the IJ's determination to the BIA, the body that issued those precedential decisions.  Therefore, the government's exhaustion argument is well-taken.  The court, however, will waive administrative exhaustion in this instance.  Petitioner's assertions about BIA outcomes and BIA processing times go unrebutted.  Any appeal to the BIA with respect to denial of bond would delay petitioner's access to the federal courts for several more months.

**Analysis**

The court turns to the merits of Di's petition.  Di argues that he received a fundamentally unfair bond hearing.  Upon review of the evidence supplied by the parties, the court sees no due process violations.  The IJ considered the evidence submitted, allowed both parties to make their arguments, and ultimately concluded that bond was not appropriate in Di's individual circumstances.

Petitioner was represented by counsel.  See Goldberg v. Kelly, 397 U.S. 254, 270–71 (1970) (quoting Powell v. Alabama, 287 U.S. 45, 68–69 (1932)

---

[1] The court will not consider the petitioner's APA claim because his petition fails to indicate what final agency action, if any, is complained of, and because he has other adequate legal remedies, including a constitutional challenge to the fairness of custody determination proceedings. See 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

("The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel."). A complete record of the proceedings was created. See Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996) ("two of the most basic of due process protections [are] a neutral judge and a complete record of the proceeding.") A competent interpreter translated English to Mandarin and Mandarin to English. See id. at 204 ("Courts have recognized the importance of a competent translator to ensure the fairness of proceedings to applicants who do not speak English."); see also B.C. v. Att'y Gen. United States, 12 F.4th 306, 314 (3d Cir. 2021) ("It is well established that the provision of an interpreter is a 'minimum' requirement of a fair hearing for asylum applicants who have limited English proficiency.").

The IJ reviewed the documentary evidence with the parties before the hearing, including a packet of materials submitted on Di's behalf. Further, Di's counsel was given an opportunity to fully argue his position on bond and provided an opportunity to rebut the government's arguments in opposition. See Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (holding that a non-citizen is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her and that the non-citizen must be allowed to make arguments on his or her own behalf).

The IJ also considered evidence regarding the petitioner's flight risk on a current basis. See Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999), amended, (Dec. 30, 1999) ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption."). As the IJ stated at the conclusion of the hearing:

> He has absolutely no ties to the United States apart from the few months that he's been here. I have absolutely no indication of how this family friend who's his bond sponsor knows him. He has limited to no employment history here in the United States. He has no kids here. He has no spouse here. He's got no immediate family here. He is the textbook definition of a flight risk, so I'm [going to] be denying[,] finding that he is a flight risk.

(Doc. 5-7, Hearing Transcript at 7).[2]

Also at the conclusion of the hearing, the IJ issued an on-the-record decision explaining the individualized basis for his ruling, i.e., a lack of family ties and community presence, lack of employment history, and a questionable connection to a proffered sponsor. See Abdulai, 239 F.3d at 549–50 (holding that

---

[2] Additionally, the IJ did not step into the role of the attorney for the government, nor did he advocate for the government's position. See Abulashvili v. Att'y Gen. of U.S., 663 F.3d 197, 207 (3d Cir. 2011); Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003). To the extent that the IJ asked any questions, he made follow up inquiries after petitioner's counsel stated that petitioner's mother and father were not in the United States of America. (Doc. 5-7, Hearing Transcript at 4–5). Absent any other evidence from Di, the court must conclude that the bond hearing was conducted by a neutral and impartial IJ and satisfied due process.

a non-citizen has the right to an individualized determination of his or her interests and that a decisionmaker must actually consider the evidence and argument that a party presents).  Accordingly, Di received a decision grounded in the evidentiary record and sufficiently reasoned to permit this court to determine whether the hearing complied with due process. See id. at 555 (noting that the Third Circuit has remanded determinations by the BIA when deficiencies made them impossible to review meaningfully).

To be sure, Di disagrees with the IJ's ultimate conclusions or the weight that the IJ placed or did not place on certain evidence.  But that disagreement does not establish that the hearing failed to comply with due process.  Nor does it authorize this court to reweigh the evidence underlying the IJ's flight-risk determination. Borbot, 906 F.3d at 279 (discussing 8 U.S.C. § 1226(e)).

"There are three pillars of a fair hearing: (1) the IJ engages in fact-finding based on the record made at a hearing and disclosed to the noncitizen; (2) the noncitizen has the opportunity to make arguments and present evidence on his/her own behalf; and (3) the IJ makes an individualized determination of the noncitizen's claims." B.C., 12 F.4th at 313 (citing Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 386 (3d Cir. 2001)).  None of those pillars are compromised in this matter.  Consequently, for the reasons set forth above, it is hereby ORDERED

9

that Di Zeng's petition for writ of habeas corpus, (Doc. 1), is **DENIED** and the

Clerk of Court is directed to close this case.

**Date:** ___7/20/26___

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court